La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Tenemos ante nuestra consideración dos recursos consolidados. En el caso CC-2004-1139, la Junta de Plani-ficación nos solicita que revoquemos la decisión del Tribunal de Apelaciones que, a su vez, revocó la resolución de la Junta de Planificación que había determinado que el pro-yecto en controversia no cumplió con el requisito estar en “real y efectiva construcción”, por lo cual había caducado la consulta de ubicación. Según el foro apelativo, la Junta aplicó indebidamente la Ley Núm. 91 de 20 de junio de 1998 (23 L.P.R.A. see. 62o). En el caso CC-2005-313, com-parecen los proponentes del proyecto para solicitar la revo-cación de la determinación del Tribunal de Apelaciones, declarándose sin jurisdicción para revisar una resolución interlocutoria de la Administración de Reglamentos y Per-misos (ARPe). Considerando que los hechos de ambos casos están íntimamente relacionados y tratándose del mismo proyecto, consolidamos los casos y procedemos a resolver-los conjuntamente.
HH
El 26 de agosto de 1994, la Junta de Planificación (la Junta) aprobó la consulta Núm. 93-06-1018-JPU para la ubicación de un proyecto comercial en una finca del barrio Factor de Arecibo.(1) La Junta reclasificó el predio objeto de la consulta, de un distrito R-l de baja densidad poblacional a un distrito de centro de mercadeo C-4. Al hacerlo, deter-minó que, tratándose de un proyecto clasificado como un desarrollo extenso, según las definiciones de la Sec. 2.01 del Reglamento de Zonificación vigente al 16 de septiembre de 1992, la Junta podría considerarlo con independencia de *344 la clasificación del predio para el cual se somete la consulta. Tomando en consideración “las proyecciones po-blacionales y ... la disponibilidad de terrenos apropiados para la construcción de viviendas y otros usos en el área que comprende el proyecto propuesto”, la Junta acordó que el proyecto se diseñara conforme a los parámetros de un distrito C-4 para el centro de mercadeo.(2) Apéndice 2 de la Petición de certiorari, Caso CC-05-313, pág. 113. Entre las condiciones para la aprobación, se estableció que: (1) el mo-vimiento de tierra debería conservar los rasgos topográfi-cos, (2) los árboles que se siembren en los estacionamientos tuvieran un mínimo de altura, (3) se proveyese un trata-miento paisajista frente a las carreteras y (4) se reforesta-ran las áreas verdes. Se impuso también como condición el cumplimiento con los requisitos de la Junta de Calidad Ambiental y los reglamentos relativos a la contaminación por ruido, en particular que los vehículos y la maquinaria operaran en rutas de acceso retiradas de los centros de enseñanza y las áreas clasificadas como “zonas de tranquilidad”. Se prohibió específicamente que la ferrete-ría propuesta vendiera materiales de construcción. En cuanto a la vigencia de la consulta, se dispuso que:
1. La acción tomada por esta Junta sobre la consulta no im-plica la aprobación de la etapa subsiguiente correspondiente, la cual deberá someterse a la consideración de la Administra- *345 ción de Reglamentos y Permisos dentro del período de vigencia de este informe.
2. Esta aprobación tendrá una vigencia de seis (6) meses. Den-tro de dicho período la parte proponente deberá someter la etapa correspondiente a la Administración de Reglamentos y Permisos. La construcción del centro de mercadeo deberá estar en real y efectiva construcción (tanto las obras de urbanización como de las estructuras permanentes) en un período de treinta (30) meses, a partir de la fecha de notificación de la aprobación de la consulta de ubicación. Transcurrido ese período de treinta (30) meses, sin estar el centro de mercadeo en real y efectiva construcción, cualquier solicitud de prórroga deberá ser radicada ante la Junta de Planificación como una solicitud de extensión a la vigencia de la consulta de ubicación, siempre y cuando se someta con treinta (30) días de anticipación a la fecha de expiración de la última aprobación, se señalen los motivos en que se basa la petición y se someta, además, evi-dencia del progreso alcanzado en la preparación de los docu-mentos y planos que el caso requiera.
3. De no someterse dicha etapa para los terrenos objeto de esta consulta dentro del término de vigencia establecido, la misma quedará AUTOMATICAMENTE ARCHIVADA para todos los efectos legales. (Enfasis suplido.) Apéndice 2 de la Petición de certiorari, Caso CC-05-313, pág. 115.
La aprobación se notificó el 16 de septiembre de 1994, por lo que el término de vigencia de la consulta se extendía hasta el 16 de marzo de 1995 y el plazo para que el pro-yecto estuviera en real y efectiva construcción vencería el 16 de marzo de 1997. El 13 de marzo de 1995, la Junta concedió al proponente una prórroga de seis meses adicio-nales a partir de la notificación de la resolución para some-ter el desarrollo preliminar correspondiente a la Adminis-tración de Reglamentos y Permisos (ARPe). De esa forma, se extendió el término de vigencia de la consulta hasta el 20 de octubre de 1996. Como la solicitud de prórroga no se sometió dentro de los treinta días anteriores a la fecha de vencimiento, la Junta la acogió como una reapertura del caso. En cuanto al término de treinta meses, dispuso que “[e]l período de real y efectiva construcción ... permanecerá inalterado”. Apéndice 2 de la Petición de certiorari, Caso CC-05-313, pág. 119.
*346 El 27 de diciembre de 1995, ARPe autorizó el antepro-yecto 95-06-C-867-APA. Posteriormente, el 20 de septiem-bre de 1996, la parte proponente solicitó una prórroga de un año al término de treinta meses que dispuso la consulta de ubicación para que el proyecto estuviera en real y efec-tiva construcción. El 3 de octubre de 1996, la Junta resol-vió que la solicitud no cumplía con la Sec. 11.00 del Regla-mento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento 5244 del Departamento de Es-tado, Reglamento Núm. 2 de la Junta de Planificación, 21 de marzo de 1995, y procedió a archivar la extensión solicitada.(3)
El 16 de diciembre de 1996 ARPe prorrogó la vigencia del anteproyecto por un año. Dispuso que, de no certifi-carse los planos de construcción y obtenerse el permiso de construcción durante ese término, ARPe archivaría el caso.
Nuevamente, el 28 de enero de 1997, la parte propo-nente solicitó a la Junta que extendiera por un año adicio-nal el término de treinta meses para la “real y efectiva construcción” del proyecto que expiraba el 16 de marzo de 1997. El 3 de abril de 1997, la Junta concedió lo solicitado y dispuso que los proponentes tendrían un año a partir de la fecha de notificación de la resolución “para culminar los procesos en [ARPe] y que el proyecto esté en real y efectiva construcción”. Además, la Junta advirtió “que de no estar en real y efectiva construcción en el término establecido no se concederá prórroga alguna y la parte proponente tendrá que iniciar todos los procesos correspondientes de interesar *347 continuar con el proyecto”. (Énfasis suplido.) Esta resolu-ción se notificó el 22 de abril de 1997, por lo cual el término para que el proyecto estuviera en real y efectiva construc-ción vencía el 22 de abril de 1998.
El 16 de diciembre de 1997, por segunda ocasión, ARPe aprobó una prórroga de un año a la vigencia del antepro-yecto y advirtió que, de no obtenerse los permisos de cons-trucción durante este término, procedería a archivar el caso.
Por tercera ocasión, el 26 de febrero de 1998, la parte proponente solicitó una prórroga de un año a la vigencia de la consulta de ubicación para la “real y efectiva construc-ción” del proyecto. El 29 de abril de 1998, la Junta concedió una prórroga a tales efectos, pero sólo hasta el 16 de diciembre de 1998, coincidiendo este término con el otorgado por ARPe para que los proponentes obtuvieran los permi-sos de construcción. El 16 de noviembre de 1998, por cuarta vez, los proponentes solicitaron otra prórroga al tér-mino para la “real y efectiva construcción”, esta vez de no-venta días. El 9 de diciembre de 1998, notificada el 24 de diciembre, la Junta denegó la solicitud de prórroga a la luz de la Ley Núm. 91 de 20 de junio de 1998, que enmienda el Art. 16 de la Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, supra.
Por su parte, ARPe aprobó una tercera prórroga a la vigencia del anteproyecto el 23 de noviembre de 1998, que sería efectiva a partir de 16 de diciembre de 1998. Tam-bién, el 11 de diciembre del mismo año, ARPe autorizó el permiso de urbanización para el movimiento de tierra para una parte de la primera fase del proyecto. El siguiente 16 de diciembre, ARPe aprobó el permiso de construcción para la edificación de cimientos en concreto.
A. Los hechos particulares del caso CC-2004-1139.
Así las cosas, el 27 de enero de 2003, la parte propo-nente solicitó a la Junta que emitiera una resolución “Acla-rando Particulares”, para dejar sin efecto la condición que *348 prohibía la venta de materiales de construcción en la ferre-tería que ubicaría en el centro de mercadeo. En Resolución de 21 de febrero de 2003, notificada el 13 de marzo, la Junta resolvió que no tenía nada que proveer a dicha soli-citud y dispuso:
Esta Junta de Planificación carece de jurisdicción para eva-luar el planteamiento sometido toda vez que la determinación del 9 de diciembre de 1998 advino final, firme e inapelable, por lo que acuerda NADA QUE PROVEER a la solicitud de acla-rar particulares. Dicho proyecto para todo efecto legal está archivado. Se advierte a la Administración de Reglamentos y Permisos que dicho caso perdió vigencia toda vez que al 16 de diciembre de 1998 la consulta no estaba en real y efectiva construcción. (Énfasis suplido y en el original.) Apéndice de la Petición de certiorari, CC-04-1139, pág. 227.
En reconsideración, los proponentes alegaron que la Junta erró al aplicar retroactivamente la Ley Núm. 91, supra, para denegar su solicitud de prórroga. También ale-garon que el proyecto estaba en “real y efectiva construc-ción” desde el 15 de diciembre de 1998, por lo cual la Reso-lución de 9 de diciembre de 1998 incidía sobre el derecho adquirido por ellos como consecuencia de la sexta exten-sión de la consulta, concedida por la Resolución de 29 de abril que prorrogó el término de vigencia de la consulta hasta el 16 de diciembre de 1998. Se anexaron tres decla-raciones juradas y unas fotos del vaciado de cemento, parte de un “Progress Report” sin fecha de recibo, para sustentar esas alegaciones.
El 16 de abril de 2003, la Junta declaró “sin lugar” la moción de reconsideración. Primeramente resolvió que, se-gún la See. 2 de la Ley Núm. 91, supra, esta ley “comenza-rá a regir inmediatamente después de su aprobación y su efecto incluirá por igual todos aquellos casos que se en-cuentren en trámite ante la Junta al momento de entrar en vigor esta Ley”. Apéndice de la Petición de certiorari, CC-04-1139, pág. 205. Además, la Junta señaló que la ley sim- *349 plemente incorporó el requisito de la real y efectiva cons-trucción vigente por vía de la reglamentación de la agencia.
En segundo lugar, la Junta rechazó el que la resolución de 21 de febrero de 2003 hubiera vulnerado un derecho adquirido por el proponente mediante la sexta extensión de la consulta. Declaró la Junta que la resolución denegó la solicitud de prórroga y exigió que el proyecto estuviera en real y efectiva construcción para el 16 de diciembre de 1998, lo cual no sucedió. El incumplimiento de esta condi-ción resultó en la expiración de la consulta de ubicación y el archivo del caso por la Junta. Además, expuso lo si-guiente:
A un mes de la fecha límite de vigencia [de la consulta de ubicación], la parte proponente admitió, por escrito, su incum-plimiento con la real y efectiva construcción del proyecto. Nos referimos a la carta fechada 16 noviembre de 1998 de la cual se desprende que el proponente conocía de la última extensión otorgada a favor de la consulta de epígrafe y del término límite para su vigencia. Tanto es así, que en dicha comunicación plantea la necesidad de que se le otorgara una prórroga de noventa (90) días para, y citamos: “[p]oder iniciar la real y efectiva construcción del proyecto en cuestión toda vez que el proceso no se ha podido complementar [sic] y el paso del [h]uracán Georges dilató los trámites finales del financia-miento necesario para dar comienzo a la construcción.”
Obran en autos que evidencian [sic] las gestiones infructuo-sas que fueron realizadas ante la ARPE, durante el mes de diciembre de 1998, en torno a la obtención de un permiso de urbanización y notificación de aprobación de permiso de construcción. Es decir, el permiso de urbanización se expidió el 11 de diciembre de 1998 de forma condicionada, entre otras cosas, a que el contratista o urbanizador obtuviese de la Junta de Calidad Ambiental, previo al inicio de la obra, el Permiso de Plan Cest, Fuente de Emisión y Desperdicios Sólidos ....
En cuanto al documento titulado “Notificación de Aproba-ción de Permiso de Construcción”, pudimos constar que fue expedido el mismo día en que la consulta de epígrafe perdía vigencia, es decir, el 16 de diciembre de 1998. Encontramos que éste también fue condicionado a que se cumpliese con forma- *350 lizar la póliza para el seguro de obreros; se sometiese eviden-cia del pago de arbitrios municipales; y se sometiese la forma ARPE-15.122 debidamente completada y firmada.
Por todo lo anterior, se comprueba que el proyecto en cuestión no estaba en real y efectiva construcción para la fecha límite de vigencia de la consulta. (Énfasis suplido.) Apéndice de la Peti-ción de certiorari, CC-04-1139, pág. 206.
Luego de varios trámites procesales, e inconforme con la determinación de la Junta, la parte proponente recurrió al Tribunal de Apelaciones mediante un recurso de revisión administrativa, para alegar, entre otras cosas, que la Junta erró al aplicar retroactivamente las disposiciones de la Ley Núm. 91, supra. Adujo, además, que la Junta privó a la parte proponente de sus derechos propietarios y abusó de su discreción al concluir que el proyecto no estaba en real y efectiva construcción.
El 25 de agosto de 2004, el Tribunal de Apelaciones re-vocó la resolución recurrida. Señaló que el proyecto se ha-bía autorizado y la consulta estaba vigente cuando se aprobó la Ley Núm. 91, supra, y que el término para la real y efectiva construcción se había prorrogado hasta el 16 de diciembre de 1998. Además, resolvió que la Junta había aplicado retroactivamente la Ley Núm. 91, supra, lo cual constituyó un error,
... ya que el proyecto se encontraba vigente ante ambas agencias. Como resultado de esta aplicación errónea, se le priv[ó] al recurrente de sus derechos propietarios, derechos protegidos por nuestra Constitución. Considerando las obras realizadas por la parte recurrente y las actuaciones de la ARPE, entendemos que el proyecto se encontraba en real y efectiva construcción para la fecha del 16 de diciembre de 1998. Apéndice de la Petición de certiorari, CC-04-1139, pág. 42.
La Junta presentó su recurso de certiorari el 3 de diciembre de 2004 y solicitó la revocación de la sentencia del Tribunal de Apelaciones. En particular, señaló que el foro apelativo había errado al no concluir que la determinación *351 de la Junta emitida en su Resolución de 9 de diciembre de 1998 había advenido final y firme y que, por consiguiente, la Junta no tenía jurisdicción para atender la solicitud de aclaraciones que el proponente presentó más de cuatro años después. Además, alegó que también erró el Tribunal de Apelaciones “al concluir que la determinación de la Junta tuvo el efecto de privar al proponente de la consulta de ubicación de derechos propietarios protegidos constitu-cionalmente ... que la Junta aplicó retroactivamente la Ley Núm. 21 [sic] de 20 de junio de 1998 y ... que el proyecto en cuestión estaba en real y efectiva construcción”. Petición de certiorari, CC-04-1139, pág. 5.
Los proponentes del proyecto, aquí recurridos, presenta-ron una oposición a la expedición de auto de certiorari y la Junta replicó. El 11 de marzo de 2005 expedimos el auto y ambas partes presentaron sendos alegatos.
B. Los hechos particulares del caso CC-2005-313.
El 26 de mayo de 2000, HT Ventures, dueño de un cen-tro comercial de Hatillo, solicitó a ARPe que ejerciera sus facultades fiscalizadoras, bajo sospechas que el proyecto en controversia no tuviera una consulta de ubicación vigente, por no haber comenzado la construcción real y efectiva-mente en el término requerido. En reacción a la carta, los proponentes escribieron al presidente de la Junta el 8 de junio de 2000, con copia al administrador del área de revi-sión técnica de ARPe y al Ing. William Figueroa de la Junta de Planificación, informando que el “proyecto está en real y efectiva construcción dentro del término concedido”. Apéndice 2 de la Petición de certiorari, CC-05-313, pág. 163. HT Ventures respondió el 21 de junio, me-diante una carta dirigida al administrador del área de re-visión técnica de ARPe, con copia al presidente de la Junta, para señalar que la alegación no se sustentaba por prueba alguna.
Al otro día, en una comunicación enviada esta vez al director del área de revisión técnica de ARPe, los propo- *352 nenies hicieron referencia a una carta que éste había en-viado al ingeniero Figueroa el 21 de junio de 2000, en la cual indica que una inspección ocular de ARPe no encontró que hubiera proceso de construcción alguno sobre el predio objeto del proyecto. En respuesta, los proponentes afirman que “el inspector que fue sobre el terreno no acudió al área específica donde hicimos los trabajos” que, según ellos, acreditaban que se había cumplido la condición que el pro-yecto estuviera en real y efectiva construcción “a diciembre de 1998”. Apéndice 2 de la Petición de certiorari, CC-05-313, pág. 165
En la carta, los proponentes también informan que, para diciembre de 1998, se había llevado a cabo la lim-pieza, el desbroce y el movimiento de tierra, además de la excavación y fundición de las vigas y los cimientos de la estructura. Con su misiva enviaron fotografías, sin fechas, del vaciado de cemento para los cimientos.
El 29 de jimio de 2000, HT Ventures reiteró su requeri-miento formal para que ARPe asumiera jurisdicción e in-vestigara si la consulta de ubicación del proyecto estaba vigente. Adujo que no era cierto que el proyecto estuviera en real y efectiva construcción ni siguiera para el 8 de junio de 2000, fecha de la carta dirigida al presidente de la Junta, en la que los proponentes afirmaron que el proyecto estaba en real y efectiva construcción, y anejó fotografías tomadas el 22 de junio de 2000 que ilustran las zapatas cubiertas de vegetación. Apuntó que “[l]as zapatas, que juntas configuran un rectángulo de un área de unos 150 metros cuadrados, no cualifica [sic] excepto como un aguaje de construcción[,] artificiosamente tratando de mantener vigente un permiso ya caducado”. Apéndice 2 de la Petición de certiorari, CC-05-313, pág. 171.
A esto ARPe respondió, en carta de 3 de julio de 2000, que ponía a disposición de HT Ventures los expedientes del caso, tanto los que hubiera en la oficina regional como en la oficina en el edificio Minillas. En cuanto a las extensiones *353 de lá consulta de ubicación, le indicó que HT Ventures de-bería revisar los expedientes de la Junta de Planificación.
El 3 de marzo de 2005, ARPe emitió una “Resolución ordenando paralización de los procedimientos, los efectos de cualquier autorización emitida bajo los casos de epí-grafe, notificación y la celebración de una vista de posible revocación”. Apéndice 2 de la Petición de certiorari, CC-05-313, pág. 24. Surge de esta resolución lo siguiente: (4)
El 22 de julio de 2003 la ARPE notificó la autorización de una enmienda al permiso de urbanización ... para variar la localización de los locales, accesos, elevadores y la infraestruc-tura necesaria. Además, en dicha resolución se advierte al pro-ponente en el apartado de Condiciones Especiales, inciso 2, que el tiempo otorgado por la Junta de Planificación para la real y efectiva construcción del centro comercial se mantiene inalterado, y que de no haberse comenzado la construcción deberá solicitar una reapertura ante la Junta de Planificación para la consulta 93-06-1018-JPU.
El 16 de abril de 2004 Arecibo Plaza Shopping Center [la parte proponente] presentó ante la ARPE un anteproyecto al-terno, 03AL2-CET01-02016, en el cual propuso reubicar y re-distribuir los lotes para ceder un lote a la Autoridad de Ener-gía Eléctrica para la construcción de una subestación. El 8 de junio de 2004 la ARPE notificó al proponente que debía radi-car la reapertura de la consulta de ubicación en la Junta de Planificación según advertida en la resolución del 22 de julio de 2003 ... Además, la ARPE advirtió que el caso permanecerá archivado hasta tanto se someta evidencia de la reapertura de la consulta. (Enfasis suplido.) Id.
ARPe procedió, entonces, a ordenar la paralización de los procedimientos ante su consideración con relación al proyecto y “de la construcción si alguna se está llevando a cabo”. Señaló que las obras realizadas en el predio se lle- *354 varón a cabo sin los permisos de construcción y que “ [a] 1 día de hoy no existen estructuras adicionales en el lote ... y tampoco existen certificaciones adicionales sobre otras construcciones en el lugar”. Id., pág. 26. Además, expuso que:
Al realizarse las obras de cimientos del Outlot Núm. 5 sin los correspondientes permisos de la ARPE no existía el derecho a reclamar en solicitudes posteriores que el Arecibo Plaza estaba en real y efectiva construcción al 16 de diciembre de 1998, fe-cha en que se expidió el permiso de construcción. Especial-mente cuando en dicho lote no se ha realizado ninguna cons-trucción con posterioridad al 16 de diciembre de 1998.
Reconoce la ARPE que fue inducida a error al autorizar so-licitudes posteriores al 16 de diciembre de 1998 ... por el hecho de que para las solicitudes posteriores al 16 de diciembre de 1998 el proponente sólo presentó las certificaciones y 3 fotos donde sólo se muestra un camión de vaciado de cemento, evi-denciando que las gestiones se realizaron sin permiso de construcción. El que la parte proponente no estuviera en real y efectiva construcción el 16 de diciembre de 1998 implica que la consulta de ubicación perdió vigencia. Hecho que fue advertido a la parte proponente por la ARPE el 8 de jimio de 2004 en el caso 03AL2-CET01-02016 [el segundo anteproyecto alterno]. (Enfasis suplido.) Id.
Inconformes con la orden de ARPe, los proponentes pre-sentaron un recurso de revisión administrativa ante el Tribunal de Apelaciones el 15 de marzo de 2005. Señalaron que ARPe actuó más allá de sus facultades al asumir juris-dicción en el caso y exigir que se reabriera la consulta de ubicación, y que ello era contrario a lo que había resuelto el Tribunal de Apelaciones en su sentencia de 25 de agosto de 2004. Según explicamos, la Junta había recurrido de esta sentencia en el recurso CC-2004-1139. Los proponentes adujeron que el señalar una vista para considerar la revo-cación de los permisos es un ataque colateral a la sentencia del foro apelativo de 25 de agosto de 2004 y que lo allí resuelto constituye cosa juzgada. Además, alegaron que ARPe había actuado en contra de sus propios actos. Solici- *355 taron que el Tribunal los eximiera del requisito de agotar los remedios administrativos y revocara la resolución de ARPe y la orden de paralización.
El 23 de marzo de 2005, el Tribunal de Apelaciones de-terminó que el dictamen recurrido era una resolución in-terlocutoria y que los proponentes no habían agotado los remedios administrativos ante ARPe sin que existiera fun-damento para relevarlos de este requisito. Por todo ello desestimó el recurso por falta de jurisdicción. Además, el foro apelativo resolvió que su Sentencia de 25 de agosto de 2004 no era una sentencia final y firme, ya que el asunto aún estaba pendiente ante nosotros, y que “cosa juzgada no es ‘cosa juzgándose’ ”.
Así, pues, el 7 de abril de 2005, los proponentes acudie-ron ante este Tribunal para señalar, en resumen, los mis-mos errores presentados ante el foro apelativo y solicitaron la paralización del procedimiento administrativo. El 12 de abril de 2005 ordenamos a ARPe expresarse sobre la soli-citud de paralización del trámite administrativo. Esta agencia compareció el 15 de abril y sostuvo que la parali-zación solicitada por los proponentes para suspender el proceso de revocación de permisos atenta contra el interés público. Adujo que la paralización de las obras de construc-ción era necesaria, ya que el Tribunal Supremo había ex-pedido del certiorari en el caso paralelo CC-2004-1139 que versa, precisamente, sobre la facultad de los proyectistas de iniciar la construcción. El 20 de mayo de 2004 expedi-mos el auto solicitado y en los términos prescritos ambas partes presentaron sus alegatos.
Expuestos los hechos que dan lugar a ambos recursos, procedemos a resolver.
rH I — I
 La Junta de Planificación de Puerto Rico es el ór-gano administrativo facultado para guiar el desarrollo in *356 tegral de nuestro país. Su ley habilitadora recoge los prin-cipios de la planificación que deben guiar el ejercicio de las facultades concedidas a la agencia. Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. see. 62 et seq.). En particular, el Artículo 4 de la ley dispone, en lo pertinente, que la Junta ejercerá los poderes concedidos
... de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos [y deberá] fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y fu-turos habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de la po-blación, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favora-bles para que la sociedad pueda desarrollarse integralmente. 23 L.P.R.A. sec. 62c.
De esta forma queda expresamente comprendido en la ley que la función cardinal de la Junta es integrar y coor-dinar la política pública sobre el desarrollo físico, econó-mico y social de este país. Junta de Planificación v. J.A.C.L., 109 D.P.R. 210, 214 (1979). Véanse: Hatillo Cash & Carry v. A.R.Pe., 173 D.P.R. 934 (2008); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 79 (2000); Carabarín et al. v. A.R.P.E., 132 D.P.R. 938, 942—943 (1993).
Nuestras expresiones recientes en Hatillo Cash & Carry v. A.R.Pe., supra, resaltan el valor de la consulta de ubicación como instrumento de planificación y la rigurosidad con la que las demás agencias reguladoras que intervienen en el proceso de la concesión de permisos deben observar sus requerimientos, pues todas las etapas posteriores a la aprobación de la consulta son partes integrales de la autorización de un mismo proyecto. Explicamos en Hatillo Cash & Carry, supra, pág. 953 que:
*357 La forma como se logra una planificación que asegure ... [la seguridad, salubridad, el desarrollo y bienestar general] para la sociedad es mediante el estudio de varios factores poblacio-nales, como son las necesidades actuales y futuras de la comu-nidad y del país, el crecimiento poblacional proyectado, los índices económicos, la existencia y el estado de los sistemas de sanidad y transportación y de instalaciones recreativas, el uso actual del suelo, entre otros.
Estos son algunos de los factores que la Junta toma en consideración al prescribir los usos adecuados para los terrenos. Es de notar que todos ellos están sujetos al factor tiempo, pues las condiciones físicas, económicas y sociales, en las cuales se fundamenta la Junta para llegar a una determinación, son necesariamente cambiantes. Es igualmente cierto que los cambios que experimentan los factores tomados en cuenta por la Junta pueden ser de tal índole que se convierten en obstáculos para la implementación efectiva de la política pública que persigue la planificación ordenada. Por eso, para preservar el sentido de los esfuerzos de las agencias reguladoras es indispensable la tramitación pronta de los procesos posteriores a la determinación de la Junta sobre los usos adecuados del terreno. Por estas razones, el término de vigencia de una consulta de ubicación, que por su propia naturaleza es una limitación temporal a sus efectos, es un elemento necesario para asegurar la implementación efectiva de la planificación del país. Es, en este contexto, que se inserta el requisito de “real y efectiva construcción” para la vigencia de una consulta de ubicación.
El que un proyecto esté en real y efectiva construcción a determinada fecha es un elemento importante de un proceso integral de planificación, que busca asegurar que las condiciones existentes al momento en que se considera y autoriza una consulta de ubicación estén presentes durante las etapas posteriores. Esta limitación temporal a la vigencia de la consulta, la cual se adopta formalmente *358 en el Reglamento del Procedimiento para la Decisiones Ad-judicativas de la Junta de Planificación (de 1989), Regla-mento 4083 del Departamento de Estado, 23 de noviembre de 1989, no exige que la construcción haya terminado, sino que se evidencien actos dirigidos a ejecutar las obras auto-rizadas en el plazo dispuesto en la resolución de la agencia. En particular, la Sec. 10.01 de este Reglamento, supra, es-pecifica:
La construcción del centro de mercadeo ... deberá estar en real y efectiva construcción en un período de treinta (30) meses a partir de la fecha de notificación de la aprobación de la con-sulta de ubicación. La vigencia de los planos o permisos de construcción que expida la Administración de Reglamentos y Permisos no excederá de doce (12) meses a-partir de la expe-dición de dicho permiso, pero nunca se excederá más de treinta (30) meses a partir de la aprobación de la consulta de ubicación.
Transcurrido ese periodo de treinta (30) meses, sin estar el centro de mercadeo en real y efectiva construcción, cualquier solicitud de prórroga a la vigencia de cualquier etapa deberá ser radicada ante la Junta de Planificación como una solicitud de extensión a la vigencia de la consulta de ubicación con no menos de treinta (30) días de anticipación a la fecha de expi-ración de la última aprobación, señalando los motivos en que se basa la petición y se someta, además, evidencia del progreso alcanzado en la preparación de documentos y planos que el caso requiera. Habiendo cumplido con lo anterior, de continuar vigente el documento de viabilidad económica que provea el fundamento para la aprobación y no haber variado sustancial-mente las condiciones de desarrollo en el sector, la Junta podrá autorizar la prórroga solicitada. La autorización de prórroga por la Junta, luego de haber transcurrido los treinta (30) me-ses indicados sin que se haya iniciado la construcción del cen-tro en forma real y efectiva, no será tomada en consideración por la Junta en la evaluación de otra consulta de ubicación para otro centro de mercadeo que se hubiere radicado ante la Junta previo a la solicitud de prórroga de la consulta aprobada. La misma consideración será la que aplique de so-licitarse prórroga para dos centros vigentes sin haberse ini-ciado su construcción si se hubiere radicado un tercer centro de mercadeo. Una vez se inicie la construcción en forma real y efectiva para cualquier centro de mercadeo, el tamaño de éste, *359 así como la localización del mismo, será tomada en considera-ción al evaluar una nueva consulta para un centro de merca-deo o para la solicitud de prórroga a una vigente en que no se hubiere iniciado la construcción del centro de mercadeo. (Én-fasis suplido.) Reglamento Núm. 4083, supra, págs. 27-28. Véase, también, la Sección 10.01 del Reglamento para Proce-dimientos Adjudicativos de la Junta de Planificación, Regla-mento Núm. 5244, supra, págs. 10-3 a 10-5.
Estas disposiciones reglamentarias demuestran el valor práctico de las limitaciones temporales dispuestas por la reglamentación de la Junta y su relación directa con la política pública establecida en su ley orgánica. Queda es-tablecido, asimismo, que la limitación temporal de la con-sulta de ubicación es una parte integral del procedimiento elaborado por la Junta para poner en vigor la política pú-blica de planificación.
El Reglamento para Procedimientos Adjudicativos de la Junta de Planificación vigente al 21 de marzo de 1995, supra, define la frase “real y efectiva construcción” utilizada por ambos reglamentos, el de 1995 y el de 1989, de la manera siguiente:
El inicio de las obras de urbanización y construcción perma-nente de una estructura sobre el terreno, como el vaciado de la losa de piso o de cimientos, el hincado de pilotes, la construc-ción de columnas, o cualquier obra más allá de la etapa de excavación; o la colocación de una casa manufacturada en sus cimientos. Reglamento Núm. 5244, supra, pág. 2-8.
La Ley Núm. 91, supra, recoge esta definición al enmendar el Artículo 16 de la Ley Orgánica de la Junta de Planificación, supra. Al así hacerlo, otorga rango de ley al requisito reglamentario de “real y efectiva construcción” ya existente, y en particular dispone:
En los casos en que se apruebe la consulta de ubicación para la construcción de un centro comercial de cien mil (100,000) o más pies cuadrados de área neta de venta por la Junta de Planificación de Puerto Rico, dicha aprobación tendrá una vi- *360 gencia de treinta (30) meses, a partir de la notificación de la aprobación de la consulta de ubicación por la Junta de Plani-ficación de Puerto Rico, dentro de cuyo término el centro co-mercial deberá estar en real y efectiva construcción. Se enten-derá por real y efectiva construcción el inicio de las obras de urbanización y construcción permanentes de una estructura sobre el terreno, es decir, cualquier obra que vaya más allá de la etapa de excavación, conforme definido en el Reglamento para Procedimientos Adjudicativos de la Junta de Planifica-ción, vigente al 21 de marzo de 1995. Disponiéndose, que una vez transcurrido el término de treinta (30) meses antes men-cionado, sin que el centro comercial se encuentre en real y efectiva construcción, la aprobación correspondiente perderá vigencia. La Junta no aprobará prórroga o reapertura alguna que se presenta a los fines de solicitar una extensión al término de vigencia de la consulta de ubicación aprobada. La caduci-dad del término de vigencia de la aprobación de una consulta de ubicación par la construcción de un centro comercial no será obstáculo para que posteriormente se pueda presentar ante la Junta una solicitud como un caso nuevo.
La Administración de Reglamentos y Permisos no podrá de manera alguna, extender la vigencia de treinta (30) meses de los centros comerciales de cien mil (100,000) o más pies cua-drados de área neta de venta. (Enfasis suplido.) 1998 (Parte 1) Leyes de Puerto Rico 303-304. Véase el Reglamento para Pro-cedimientos Adjudicativos de la Junta de Planificación, Regla-mento Núm. 6031, 28 de septiembre de 1999, pág. 43.
Ciertamente, la definición de la frase “real y efectiva construcción” que recoge la ley es cónsona con las definicio-nes que obran en los reglamentos de la Junta. Pero, ade-más, al dar fuerza de ley a la prohibición de prorrogar o reabrir la consulta una vez pasado el término de treinta meses, la Asamblea Legislativa se aseguró que se imple-mentaran estrictamente las decisiones de planificación de la Junta, para permitirle cumplir su misión de planifica-ción integrada.
Para preservar el sentido del requisito de real y efectiva construcción, la Ley Núm. 91, supra, desautorizó expresa-mente la prórroga o reapertura de una consulta de ubica-ción vencida. De esta forma, el legislador respondió al *361 efecto negativo de la práctica de la especulación con los terrenos sobre el desarrollo económico del país. Conforme a la política pública de desarrollar la economía de Puerto Rico y el deber de la Junta de promover la productividad y competitividad, la exposición de motivos de la ley reconoce que los términos de seis meses y treinta meses para la vigencia de una consulta de ubicación
... se establecen con el propósito de combatir la especulación de terrenos sobre los cuales se persigue la aprobación de pro-yectos que finalmente no se desarrollan y en cuyo periodo se compromete la construcción de un pietaje comercial considerable, privando como consecuencia la aprobación de otros pro-yectos de similar naturaleza. Estas situaciones impactan ne-gativamente la economía del país. Leyes de Puerto Rico, supra, págs. 302-303.
Una mirada integrada a las disposiciones de los reglamentos adjudicativos de la Junta muestra la intención de que todas las etapas hasta la autorización final del proyecto se lleven a cabo en un marco de tiempo razonable, con el fin de que el estudio de viabilidad y el análisis de los demás elementos temporales de la planificación se mantengan vigentes. Además del término de treinta meses para que el proyecto esté en real y efectiva construcción, los reglamentos adjudicativos de la Junta exigen que la parte proponente presente ante ARPe la próxima solicitud correspondiente a las facultades de esta agencia en la vigencia de la consulta de ubicación. Véanse las Secciones 10.00 y 10.01 de los Reglamentos de 1999, 1995 y 1989, supra. Así, pues, para autorizar una prórroga al término de vigencia, la Junta requiere que se haga un análisis de los cambios en el sector para asegurarse que aún se mantiene una cohesión con la planificación del área. Véase la Sección 11.00 de los Reglamentos de 1999, 1995 y 1989, supra. Si la consulta de ubicación cuya extensión se solicita perdió vigencia por el transcurso del término autorizado, los reglamentos adjudicativos de la Junta exigen que *362 se presente una nueva consulta. Véase la Sección 12.00 de los Reglamentos de 1999, 1995 y 1989, supra.(5)
Los tratados en materia de planificación y zonificación de los terrenos señalan que la importancia de los permisos de construcción en el proceso de autorización de un proyecto radica en que éstos aseguran el cumplimiento del plan maestro de acuerdo con los reglamentos de planificación y zonifícación. Véanse: 2 Yorkley’s Zoning Law and Practice 4th Sec. 14-1, pág. 14-1 (2007); 3 Anderson’s American Law of Zoning 4th Sec. 19.02, pág. 355 (1996). Así pues, y como corolario del poder del Estado para reglamentar los usos del terreno, varios estados de Estados Unidos han reconocido y avalado el condicionar los permisos de un proyecto a que se inicie la construcción en un término específico. Véase Anderson’s, supra, Sec. 20.68. Véanse, además: Torok v. Jones, 448 N.E.2d 819 (1983); Lucia v. Zoning Hearing Board, 437 A.2d 1294 (1981); Hunters Brook Realty Corp. v. Zoning Bd., 436 N.E.2d 978 (1979).
f — ( HH I — 1
El asunto medular de esta controversia no es la aplica-ción retroactiva de la Ley Núm. 91, supra, pues ésta clara-mente establece que sus disposiciones aplicarían a los ca-sos que estuvieran en trámite ante la Junta a la fe- *363 cha de la aprobación de la ley.(6) Así sucedió en el caso ante nuestra consideración. No está en controversia que entre 1995 y 1998, a petición de los proponentes, la Junta les otorgó prórroga tras prórroga para que obtuvieran los per-misos necesarios de ARPe y comenzaran la real y efectiva construcción del proyecto en el término concedido. Al ha-cerlo, la Junta ejerció la discreción que le concedían sus reglamentos. Transcurridos más de cuatro años desde la aprobación de la consulta de ubicación, el 9 de diciembre de 1998, la Junta denegó una quinta prórroga. A esa fecha había entrado en vigor la Ley Núm. 91, supra, por lo cual la Junta perdió la facultad de otorgar más prórrogas al requisito de la real y efectiva construcción. La verdadera controversia en este caso gira, pues, en torno al significado del requisito de la real y efectiva construcción, y si los pro-ponentes cumplieron con éste antes de que la consulta de ubicación perdiera vigencia.
Como evidencia de que el proyecto estaba en real y efec-tiva construcción al 16 de diciembre de 1998, los proponen-tes presentan fotografías de unas obras de excavación, mo-vimiento de tierra y vaciado de cemento para la construcción de los cimientos en un espacio de ciento cin-cuenta metros cuadrados, aproximadamente mil seiscien-tos pies cuadrados, en un proyecto que tendría más de 450,000 pies cuadrados. La carta de los proponentes al director regional de ARPe de 22 de junio de 2000 refleja que el área en que ubican estas obras era tan reducida, que el inspector que acudió al predio certificó que no encontró evidencia de que hubiera alguna obra en proceso. Incluso, más de seis años desde la aprobación de la consulta y dos años desde el alegado comienzo de las obras, no se había llevado a cabo ninguna construcción adicional. Este cuadro sostiene la apreciación de las agencias y manifiesta un evi- *364 dente intento por parte de los proponentes de exteriorizar un simulacro de cumplimiento en menosprecio al signifi-cado de la ley y a los esfuerzos de planificación de la Junta y ARPe. Además, aunque fuera cierto que el vaciado de cemento para los cimientos ocurrió el 15 de diciembre de 1998, los proponentes no obtuvieron los permisos de cons-trucción de ARPe hasta el 16 de diciembre de 1998, lo cual significa que se trató de una construcción ilegal que tam-poco podría servir de base para su reclamo.
La definición de la Ley Núm. 91, supra, y los reglamentos de la Junta sobre el requisito de la real y efectiva construcción identifica, a modo de ejemplo, las obras mínimas que aceptará la agencia como prueba de que se ha dado comienzo a las obras de construcción para efectos de la vigencia de la consulta de ubicación. En particular, especifica que cualquier obra más allá de la etapa de excavación, como el vaciado de la losa de piso o de cimientos, el hincado de pilotes o la construcción de columnas, cumple con el requisito. Como toda disposición normativa, ésta requiere que la interpretemos de manera que haga sentido y cumpla con su propósito. Por eso, no podemos avalar una interpretación que nos lleve a concluir que hacer una sola de estas obras de manera aislada es suficiente para cumplir con el requisito de la ley y los reglamentos. Por el contrario, la definición de real y efectiva construcción concibe la etapa de construcción de un proyecto como un proceso continuo que comienza, pero no termina, con la instalación de los cimientos en el terreno. Por eso, no cumple con el requisito un vaciado de cemento apurado, sin permiso de construcción y sin actividad de construcción posterior. Para cumplir con el requisito de estar en real y efectiva construcción, no son suficientes los simulacros y los aguajes de construcción, sino que el proyecto esté en una etapa lo suficientemente avanzada como para preservar los esfuerzos de planificación de la Junta. La Ley Núm. 91, supra, entró en vigor precisamente para exigir el cumplimiento estricto *365 con el requisito de la real y efectiva construcción, teniendo en cuenta las prácticas que socavan los intentos de plani-ficación, como la especulación de terrenos.
No debemos olvidar que las decisiones de las agencias administrativas merecen nuestra deferencia, y al revisar sus determinaciones no debemos soslayar el ejercicio de su peritaje. En este caso, la Junta determinó que no se cumplió con el requisito de la real y efectiva construcción del proyecto y que las obras llevadas a cabo fingían cumplir con este requisito para extender artificialmente la vigencia de la consulta. Del mismo modo, ARPe determinó que los proponentes procuraron la aprobación de permisos posteriores mediante manifestaciones a la agencia que la indujeron a error. Estas determinaciones son resultado del conocimiento especializado de las agencias aplicado a los hechos que surgen de sus respectivos expedientes. Los recurridos no han presentado razones convincentes para descontar las determinaciones de ambas agencias.
La real y efectiva construcción, aunque no exige una construcción terminada, requiere que se comiencen las obras permanentes de las estructuras del proyecto autori-zadas por la Junta y ARPe en un período de tiempo razonable. Una construcción en marcha, con los debidos permisos de construcción, es una aplicación de los usos de los terrenos vislumbrados y autorizados por la Junta. De esta forma, entre otras, se preservan los mandatos de la Junta recopilados en una consulta de ubicación válida y en ese proceso, desde la construcción hasta la habilitación del proyecto finalizado, se da cumplimiento a un ejercicio de planificación en beneficio de la comunidad, para el bienes-tar social y económico del país.
Por todo lo dicho, procede revocar la sentencia del Tribunal de Apelaciones de 25 de agosto de 2004. Resolvemos que el proyecto en controversia no estaba en real y efectiva cons-trucción a la fecha dispuesta por la Junta de Planificación, por lo cual venció la consulta de ubicación. Así pues, sin *366 una consulta de ubicación vigente, los permisos otorgados por ARPe son ineficaces. Visto lo anterior, resulta innecesa-rio expresarnos sobre los señalamientos de error de los pe-ticionarios en el caso ante ARPe.

Se dictará sentencia de conformidad.

 La finca tiene una cabida de 42.87 cuerdas y se propone la construcción de un centro de mercadeo con un área de construcción de 465,191 pies cuadrados.

 Del informe de la Junta de Planificación, que aprobó la consulta de ubicación, surge que el análisis económico del impacto del proyecto se preparó vislumbrando un efecto económico del proyecto a corto plazo. El inciso (12) de las determinaciones de hechos del informe señala que “el economista Dr. Jorge Freire, en representación de la parte proponente realizó un estudio de viabilidad económica, el cual establece, entre otras cosas, que el proyecto propuesto, el cual se espera que comience a operar el año 1998, no tendrá efecto adverso sobre los negocios al detal establecidos y por restablecerse en el Municipio de Arecibo”. (Énfasis suplido.) Apéndice 2 de la Petición de certiorari, Caso CC-05-313, pág. 115. Para la fecha en que surgió la controversia ante la Junta en 2003, habían transcurrido más de nueve años desde la aprobación de la consulta, sin que se hubiera puesto al día el análisis económico, a pesar que surge de la consulta que el informe económico se limitó a evaluar el impacto a sólo cuatro años de la aprobación de la consulta de ubicación.

 El Reglamento para Procedimientos Adjudicativos de la Junta de Planifica-ción, Reglamento Núm. 5244, con vigencia el 21 de marzo de 1995, dispone en su See. 11.00, pág. 11-1, que: “La Junta podrá conceder prórroga a la vigencia de una con-sulta, siempre que la petición de prórroga se someta con no menos de treinta (30) días y no más de sesenta (60) días de anticipación a la fecha de expiración de la consulta, se señalen los motivos en que se basa la petición y se someta, además, evidencia del progreso alcanzado en la preparación de los documentos y planos que el caso requiera. Si la solicitud se sometiera con menos de treinta (30) días, ésta será considerada como una solicitud de reapertura para todos los efectos de la Reglamen-tación vigente, incluyendo el Reglamento para el Cobro de Derechos.”

 La única actividad posterior al 3 de julio de 2000 que surge de los apéndices de este recurso es la autorización por ARPe de un permiso de urbanización para el movimiento de tierra el 12 de enero de 2001, y la autorización de un anteproyecto alterno 03AL2-CET00-02016 para redistribuir los edificios y disminuir el área de construcción, el 19 de junio de 2003.

 El Reglamento Adjudicativo de la Junta (de 1989), supra, disponía en su See. 12.00, pág. 29, que “[c]ualquier solicitud de reapertura se considerará como un caso nuevo de no existir suficiente información en el expediente que provea los elementos de juicio necesarios para tomar la determinación, la solicitud de reapertura será denegada, pudiendo la parte proponente radicar una consulta nueva a su discreción”.
El Reglamento Adjudicativo de 1995, supra, dispuso: “Toda solicitud de reaper-tura será acompañada de seis (6) copias de todos los documentos requeridos según la reglamentación vigente al momento de su radicación en aquellos casos que no hayan transcurrido más de tres (3) años [desde la expiración d]el término de la vigencia de la consulta aprobada. Si hubiesen transcurrido más de tres (3) años deberán some-terse todas las copias de los documentos que requiera una nueva consulta.” El Re-glamento Adjudicativo de 1999, supra, actualmente dispone que se requerirá una nueva consulta cuando hayan transcurrido cinco años desde el cese de la vigencia de la consulta.

 Cabe señalar que, antes de la aprobación de la Ley Núm. 91, supra, la Junta tenía la discreción de no conceder una prórroga.